

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5420 | DATE | 10/11/2002 |
| CASE TITLE | Dan Gingold vs. Unum Life Insurance Co., et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Unum's motion for summary judgment (22-1) is granted Defendant Unum's motion to strike (32-1) affidavit of Dan Gingold is denied as moot. Gingold's motion for summary judgment (20-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 1 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | 02 OCT 11 AM 9:14 | 10/11/2002 date mailed notice | |
| GL courtroom deputy's initials | | Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAN GINGOLD, )
)
        Plaintiff, )
)
v. ) Case No. 01 C 5420
)
)
UNUM LIFE INSURANCE COMPANY OF )
AMERICA, N/K/A UNUMPROVIDENT )
CORPORATION a foreign insurance corporation, )
)
        Defendant. )

DOCKETED
OCT 1 5 2002

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Dan Gingold ("Gingold"), filed an Amended Complaint against Defendant, UNUM Life Insurance Company of America ("UNUM"), to recover benefits allegedly due under an employee benefit plan governed by the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq* ("ERISA"). The parties have filed cross motions for summary judgment. In addition, UNUM has filed a motion to strike the affidavit of Gingold. For the reasons stated below, UNUM's motion for summary judgment is granted while its motion to strike Gingold's affidavit is denied as moot. Gingold's motion for summary judgment is denied.

I.    BACKGROUND[1]

In July 1994, UNUM issued a Group Long Term Disability Insurance Policy ("Policy") to Gingold's employer, Accurate Die and Stamping, Inc. ("Accurate") for the benefit of Gingold and other

---

[1] The following facts, unless otherwise specified, are culled from the parties' Local Rule 56.1 Statements of Undisputed Material Facts and the admitted facts from the Plaintiff's and Defendant's answers.



qualified employees. According to the Policy, the group of qualified employees include "[a]ll full-time active employees working at least [thirty] hours per week." The Policy characterizes active employment as "working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation." Under the Policy, a qualified employee who becomes disabled is entitled to sixty-six and two-thirds percent of his or her monthly earnings. The Policy defines monthly earnings as:

> Your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, but does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

At the time UNUM issued the Policy, Gingold served as Accurate's Chief Executive Officer (CEO). Accurate paid Gingold a monthly salary of $7,000, amounting to an annual salary of $84,000. In addition to serving as Accurate's CEO, Gingold owned the building occupied by his employer. He rented the premises to Accurate for $2,583 a month, totaling $30,996 each year. In conjunction with UNUM's issuance of the Policy, Accurate submitted information regarding Gingold's earnings. Accurate provided an Employee Census in which it listed Gingold's salary as $84,000. Accurate also completed a UNUM Long Term Disability Employee Listing form in which it reported Gingold's basic annual earnings as $115,000.[2] UNUM used the $115,000 basic annual earnings figure to calculate Gingold's basic monthly earnings ("BME") as $9,583, and the premium it charged Gingold for his coverage.

---

[2]Richard Spiegel("Spiegel"), then President of Accurate, prepared the form on his employer's behalf. The form asked for each qualified employee's basic monthly earnings ("BME"). *See* Plaintiff's Motion for Summary Judgment, Ex. E-F. Instead, Spiegel provided his assessment of each qualified employee's basic annual earnings. Spiegel gave no explanation on the documents he provided to UNUM accounting for the $31,000.00 difference between Gingold's $84,000.00 salary and his $15,000.00 annual earnings. Spiegel's sworn affidavit reveals that the $115,000 figure reflects Gingold's annual salary of $84,000.00 as well as Gingold's annual rental income of $30,996.00. *See* Defendants' Appendix, Exhibit D: Administrative Record at UACL 00450.

In June 1999, Gingold filed a claim for long-term disability benefits available under the Policy. Gingold explained that he had served as the President and CEO of Accurate until April 1999, when he became totally disabled.³ Gingold reported that on the last day he worked, his basic monthly salary was $7,000 while his monthly pre-tax contribution to his 401(k) deferred compensation plan ("401(k)") was $700. Yet Gingold also wrote that his basic monthly earnings were $9,583.⁴

UNUM received Gingold's claim in early July 1999. On July 19, 1999, UNUM Benefits Specialist Willie Mae Washington ("Washington") conducted a telephone interview with Gingold regarding his claim. Gingold told Washington that his monthly salary was $7,000. Washington's interview notes do not, however, indicate that Gingold spoke of the $2,583 Accurate paid to him in rent each month. *See* Administrative Record ("Admn. Rec.") at UACL 00054-62.⁵ The Policy requires that a claim for benefits include "the appropriate documentation of [the claimant's] monthly earnings." As such, Washington wrote to Gingold on August 16, 1999 requesting "some form of verification of your return to work earnings in order to accurately calculate your benefits." Shortly thereafter, Gingold provided duplicate earnings statements and tax returns reflecting that his monthly salary was $7,000, $700 of which he contributed to his 401(k) plan. The documentation did not reveal Accurate's rental payments to Gingold. *See* Admn. Rec. at UACL 00084-122.

On September 27, 1999, UNUM notified Gingold that his request for benefits had been approved. Pursuant to the Policy, UNUM awarded Gingold sixty-six and two-thirds percent of his BME

---

³Gingold suffered from back, leg, neck, and upper limb pain due to cervical and thoracic radioulopathy and lumbar radiculopathy.

⁴Gingold's claim did not account for the difference between his salary and his monthly earnings. Gingold did not refer to the $2,583.00 Accurate paid to him in rent each month. *See* Defendants' Appendix., Exhibit D: Administrative Record, UACL 00029-39.

⁵Citations to the Administrative Record are to the pages attached as Exhibit D of Defendant's Appendix.

reduced by his 401(k) contribution. UNUM considered Gingold's BME to include his $7,000 monthly salary less his monthly contribution of $700 to his 401(k) plan, resulting in a BME figure of $6,300 UNUM excluded Accurate's rental payments to Gingold from the calculation of his BME.

On October 1, 1999, Gingold contacted UNUM Customer Care Representative Janeen Barone ("Barone") to discuss UNUM's assessment of his BME. Gingold contended that his BME should include both his salary and his rental income, and thereby total $9,583. He pointed out that he had paid premiums on that amount. UNUM subsequently initiated a review of its calculation of Gingold's BME. As part of that review, Gingold completed the UNUM Education and Employment History form, on which he noted that Accurate paid him an annual salary of $84,000.00 for his work as Accurate's President and CEO. He wrote that his responsibilities included general and strategic management of the company. Gingold did not describe or disclose the rental income he received from Accurate. *See* Admn. Rec. at UACL 00147-149.

On November 23, 1999, Barone forwarded Gingold's claim to a certified public accountant ("CPA") for review of Gingold's BME calculation. According to the CPA, UNUM correctly excluded Gingold's rental income from his BME for the following three reasons: 1) Gingold's rental income does not meet the definition of monthly earnings as set forth in the Policy contract;[6] 2) Gingold did not report the rental income on his 1998 W-2 form; and 3) The rental income does not represent earnings from

---

[6]The Policy defines BME as "[y]our gross monthly income from your Employer . . . [which] includes your total income before taxes." The CPA referred the sales summary of benefits for the Policy, which defines BME as "salary without deferred comp[ensation]." *See* Plaintiff's Motion for Summary Judgment, Ex. O. Furthermore, the UNUM Coverage Listing for Accurate's Policy, part of the administrative record UNUM submitted to this Court, defines "earnings" as "salary w/o def[erred] comp[ensation]." *See* Admn. Rec. at UACL 00194.

Gingold's performance at work.[7] UNUM relied on this analysis throughout the duration of the review process.

By a letter of April 13, 2000, Barone advised Gingold that UNUM had completed its review of Gingold's claim. She stated that UNUM had determined that it properly excluded Gingold's rental income from the calculation of his BME. Barone reiterated the Policy's definition of BME. In addition, she stressed UNUM's reliance on the analysis and the conclusion of the CPA in reaching its decision. Consequently, UNUM affirmed its original computation of Gingold's BME as $6,300. Barone assured Gingold that UNUM would reimburse him to the extent he paid premiums on both his salary and his rental income rather than his salary alone.

On May 22, 2000, Gingold appealed UNUM's decision to exclude his rental income from the computation of his BME. UNUM referred Gingold's claim to a CPA, who concluded that UNUM correctly calculated Gingold's BME to exclude Gingold's rental income. On May 26, 2000, UNUM Senior Customer Care Consultant Cory Shoob ("Shoob") informed Gingold that in light of the CPA's review there was no basis to include his rental income in his BME. Shoob also told Gingold that UNUM had forwarded his claim to the Quality Review Section for further review.

On August 24, 2000, Janet V. Britton ("Britton"), Lead Appeals Specialist for UNUM notified Gingold that UNUM had completed its review of his claim and upheld its exclusion of Gingold's rental income from his BME. Britton explained that "[t]he intent of the [P]olicy" is to calculate BME based on "compensation 'earned' for services rendered." Because Accurate did not pay Gingold rental income for services rendered, UNUM did not consider the income to be "earnings." Britton emphasized that UNUM's acceptance of Gingold's premium payments that were based on his salary and rental income

---

[7]The CPA acknowledged that UNUM charged Gingold a premium under the Policy based on his monthly salary and his rental income. She suggested that UNUM refund to Gingold the amount of premium he overpaid due to the inclusion of the rental income.

5

did not create coverage for that rental income under the Policy. However, Britton assured Gingold that UNUM would reimburse him for the amount he overpaid his premiums.

On January 19, 2001, Gingold requested additional review of his claim. In a letter dated March 21, 2001, UNUM Appeals Consultant Shaundra O'Neal ("O'Neal") advised Gingold that UNUM had completed a re-appellate review of his claim and had upheld the previous appellate determination. In support of UNUM's action, O'Neal referenced the reasoning contained in Britton's letter of August 24, 2000 as well as that contained in Barone's letter of April 13, 2000. On March 27, 2001, UNUM informed Gingold that he had exhausted the Policy's administrative remedies and that UNUM's decision finding his earnings to include his salary but to exclude his rental income was final.[8] Gingold subsequently filed this action under ERISA to recover benefits allegedly due from the exclusion of his rental income from the calculation of his BME.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

---

[8] On May 11, 2002, UNUM advised Gignold that due to the Social Security Administration's determination that he was disabled and thus entitled to Social Security monthly disability benefits, his UNUM claim was overpaid. UNUM therefore reduced Gingold's benefits under the Policy to $2,484.00, reflecting his $1,658.00 monthly Social Security benefits.

6

(citations omitted). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

In light of ERISA's governance of the Policy, we must also look to the Statute's standard of review. The United States Supreme Court has held "that a denial of benefits under [ERISA] is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). Where, as here, an ERISA benefits plan grants such authority to a plan administrator, this Court must review the denial of benefits under the arbitrary and capricious standard. *See id.*; *see also Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998). It is undisputed that the Policy provides:

> The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy. Policy at Certificate Section.[9]

Because the Policy clearly gives UNUM the discretion to make benefits determinations and construe terms of the Policy, Gingold can only prevail if UNUM's decision to exclude his rental income from the calculation of his BME was arbitrary and capricious.[10]

The Seventh Circuit has described the arbitrary and capricious standard as "the least demanding form of judicial review of administrative action." *Trombetta v. Cragin Fed. Bank First Sav. Employees*

---

[9] Citations to the Policy are to the pages attached as Exhibit C in Defendants' Appendix.

[10] The parties agree that the arbitrary and capricious standard is the appropriate standard of review. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, 5; *see also* Memorandum in Law in Support of Defendant's Motion for Summary Judgment, 7-8.

7

*Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). The standard necessitates a deferential review of the administrator's decision that is limited to the administrative record.[11] *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999). An administrator, empowered with such a high level of authority, enjoys "a broad, unchanneled discretion to deny claims." *Herzberger v. Std. Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000). Consequently, an administrator's decision must be more than "clearly incorrect, but downright unreasonable" to be deemed arbitrary and capricious. *Morton v. Smith*, 91 F.3d 867, 870 (7th Cir. 1996) (citation omitted).

In evaluating an administrator's action, the Seventh Circuit has urged that the judicial focus be on whether the decision of the administrator can be characterized as a rational one. *See Cozzie*, 140 F.3d at 1108-09; *see also Exbom v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990). If the administrator has made "a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the [administrator's] decision is final." *Exbom*, 900 F.2d at 1143. In the context of this case, we need not determine whether we would have come to the same conclusion as UNUM or even have depended on

---

[11]UNUM provided this Court with a copy of the Administrative Record on June 6, 2002. Both parties acknowledge that this Court's review of UNUM's decision is limited to that record. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment, 8; *see also* Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment, 6. Nonetheless, Gingold submitted his sworn affidavit, which is not part of the administrative record, to this court. *See* Plaintiff's Motion for Summary Judgment, Ex. C. UNUM consequently filed a motion to strike Gingold's affidavit. In response, Gingold argued that UNUM's motion did not comply with the notice of service and presentment requirements under Local Rule 5.3. *See* Plaintiff's Response to Defendant's Motion to Strike Dan Gingold's Affidavit, 1.

This Court is obligated to disregard Gingold's affidavit regardless of UNUM's motion, let alone whether UNUM's motion complied with the Rule. Gingold's affidavit is unambiguously outside the administrative record, and therefore this Court cannot consider it when reviewing UNUM's decision. *See Perlman*, 195 F.3d at 981-82. UNUM's Motion to Strike Affidavit of Dan Gingold is therefore denied as moot. The effect of the Court's refusal to consider Gingold's affidavit is negligible. As Gingold concedes, the facts contained in his affidavit can be found in the administrative record. *See* Plaintiff's Response to Defendant's Motion to Strike Dan Gingold's Affidavit, 1.

the same authority on which the company relied. *See James v. Gen. Motors Co.*, 230 F.3d 315, 317 (7th Cir. 2000). Instead, we need only find that UNUM's decision was not so "downright unreasonable" to be deemed arbitrary and capricious. *Morton*, 91 F.3d at 870.

## B.     Review of UNUM's Decision

We now address whether UNUM's exclusion of Gingold's rental income from his BME can be sustained under the arbitrary and capricious standard of review. Under this standard, we evaluate the following factors that the Seventh Circuit set forth in *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995):

> [T]he impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination.

The first four factors require the judiciary to examine the detail in which the administrator examined the facts surrounding the claim. *See Cozzie*, 140 F.3d at 1009. In this case, there is little disagreement about the factual situation or the opportunity of Gingold to address UNUM regarding the reasons for its decision.[12] Rather, the central dispute between the parties revolves around the last *Chalmers* factor – the soundness of UNUM's ratiocination, or calculation, of Gingold's BME.

In order to assess whether UNUM's decision to exclude Gingold's rental income from the calculation of his BME was arbitrary and capricious, we must focus on the terms of the Policy. *See Cozzie*, 140 F.3d at 1009. The Policy defines monthly earnings as:

---

[12]Gingold argues that "[n]owhere in UNUM's claim evaluation did UNUM even consider whether Gingold's rental income" should be included in the calculation of his BME. Plaintiff's Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment, 5. To the contrary, UNUM subjected its calculation of Gingold's BME to an extensive review by two CPA's and numerous UNUM staffers who conducted an initial review, an appellate review, and a re-appellate review. *See generally* Admn. Rec. The review, memorialized in the six hundred plus page Administrative Record, focused almost entirely on whether UNUM correctly excluded Gingold's rental income from his BME. *See id.*

Your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, but does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer. Policy at LTD-4.

The dispute and the parties' pleadings reveal that the above definition is open to more than one interpretation. Only UNUM, however, has the "discretionary authority to determine [a claimant's] eligibility for benefits and to interpret the terms and provisions of the policy." Policy at Certificate Section. In this case, UNUM considered the Policy's definition of monthly earnings as "gross monthly income" to be insufficient for purposes of calculating Gingold's BME. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment, 13. Consequently, UNUM exercised its discretionary authority by interpreting the Policy's definition of monthly earnings to include Gingold's monthly salary of $7,000, less his $700 contribution to his 401(k) plan, while excluding his monthly rental income of $2,583. *See id.* at 11-12. In light of that interpretation, UNUM calculated Gingold's BME as $6,300. Throughout the review process, UNUM emphasized the following three reasons for its decision: 1) Gingold's rental income does not meet the definition of monthly earnings as set forth in the Policy contract; 2) Gingold did not report the rental income on his 1998 W-2 form; and 3) The rental income does not represent earnings from Gingold's performance at work. *See* Admn. Rec. at UACL 00230-232, 00270-271, 00521-522.

Gingold characterizes UNUM's interpretation of the Policy and its calculation of his BME as arbitrary and capricious. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, 6-7. According to Gingold, the Policy's definition of monthly earnings as "[y]our gross monthly income from your Employer... includ[ing] your total income before taxes" is so unambiguous that it is not open for interpretation. *See id.* (quoting the Policy). In fact, Gingold alleges that UNUM

has no "legal authority to blatantly alter the definition of its Policy to include terms which are not there."[13] *Id.* at 7. Gingold believes that the Policy therefore encompasses, and does not distinguish between, the salary Accurate paid him as his employer and the rental income Accurate paid him as his tenant. *See id.* at 6-7. Gingold further argues that because the Policy does not provide an explicit exclusion for rental income in the definition of monthly earnings, UNUM acted unreasonably in exempting Gingold's rental income from the calculation of its BME. *See id.* at 7.

We disagree with Gingold's characterization of UNUM's interpretation of the Policy and its subsequent calculation of his BME as arbitrary and capricious. Gingold's arguments in support of his position ignore UNUM's expansive discretionary authority to determine his benefits and construe the terms of the Policy.[14] The Seventh Circuit has explained that "[t]he terms as they are meant to be applied in the plan documents may not be self-defining in all situations." *James*, 230 F.3d at 317-18. In this case, UNUM exercised its authority to interpret those Policy terms it deemed to be inadequate for the purpose of computing Gingold's BME. UNUM's interpretation, if not unreasonable, is binding. *See id*; *see also Cozzie*, 140 F.3d at 1008-10. We find that UNUM's interpretation of the Policy's definition of monthly earnings to include Gingold's salary but exclude his income was reasonable, as was UNUM's subsequent calculation of Gingold's BME.

Indeed, UNUM made "a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom*, 900 F.2d at 1143. The issue

---

[13]Gingold believes UNUM added terms to the definition of monthly earnings in interpreting the Policy's definition of monthly earnings to be limited to Gingold's "salary," that Accurate paid him as "compensation for services rendered," which he declared on his W-2 forms. Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment, 4-5.

[14]Because UNUM's interpretation of the Policy and subsequent determination of Gingold's BME was reasonable, we would not disturb its decision even if we believed, as Gingold does, that his interpretation could have been permissible under the Policy. *See Russo v. Health, Welfare & Pension Fund, Local 705 Int'l Brotherhood of Teamsters*, 984 F.2d 762, 766 (7th Cir. 1993).

11

before UNUM was whether to include Gingold's rental income in the calculation of his BME. UNUM concluded that the Policy's definition of monthly earnings did not encompass Gingold's rental income and calculated Gingold's BME accordingly. UNUM set forth three reasons, each grounded in the language of the Policy and the Administrative Record, for its decision. *See* Admn. Rec. at UACL 00230-232, 00270-271, 00521-522. UNUM first explained that Gingold's rental income does not meet the Policy's definition of monthly earnings. *See id.* While the Policy's definition of monthly earnings is ambiguous, the Administrative Record contains documents that clarify the meaning of the term. The first CPA review of Gingold's claim observed that the sales summary of benefits for the Policy defined BME as "salary without deferred comp[ensation]." Admn. Rec. at UACL 00203. The UNUM Coverage Listing for Accurate's Policy similarly states that the "definition of earnings" is "salary w/o def[erred] comp[ensation]." *Id.* at UACL 00194.

Second, UNUM emphasized that it correctly excluded Gingold's rental income from the calculation of his BME because Gingold had not declared that income on his 1998 W-2 forms. *See* Admn. Rec. at UACL 00230-232. The Policy requires that a claim for benefits include "the appropriate documentation of [the claimant's] monthly earnings." Policy at LTD-13. Gingold provided duplicate earnings statements and tax returns which accounted for his monthly salary of $7,000.00. *See* Admn. Rec. at UACL 00084-122. These documents did not, however, account for Accurate's monthly $2,583.00 rental payments to Gingold.[15] *See id.* Gingold never provided UNUM with the required documentation.[16] *See generally* Admn. Rec.

---

[15] Gingold's 1998 tax return stated that he made $51,748 in rental income, far more than the $30,996 in rental payments Accurate made to Gingold each year. *See* Admn. Rec. at UACL 00115. The tax return did not account for the source of the income. *See id.* at UACL 00103-115.

[16] Gingold argues that he is entitled to benefits based on his rental income because UNUM, when issuing the Policy to Accurate in July 1994, had calculated Gingold's monthly earnings and premiums to include his rental income. *See* Memorandum of Law in Support of Plaintiff's Motion

12

UNUM's final reason for excluding Gingold's rental income from the calculation of his BME was that it did not represent earnings from Gingold's performance at work. *See* Admn. Rec. at UACL 00230-232, 00270-271, 00521-522. The Policy protects those employees who are actively "working for [their] Employer for earnings that are paid regularly" for the performance of "the material and substantial duties of [their] regular occupation." Policy at LTD-1, GLOSSARY-1. As UNUM explained during its review of Gingold's claim, "[t]he intent of the [P]olicy" is to calculate BME based on "compensation 'earned for services rendered." Admn. Rec. at UACL 00270-271. Accurate, as Gingold's employer, paid Gingold a monthly salary of $7,000.00 for the general and strategic management Gingold provided as Accurate's President and CEO. *See* Admn. Rec. at UACL 00147-149. Accurate, as Gingold's tenant, paid Gingold $2,583.00 a month in rent. Because Accurate did not pay Gingold rent as "compensation for services rendered," UNUM did not consider the rental income to be "earnings" under the Policy. Admn. Rec. at UACL 00270-271. Given the extremely deferential standard of review that governs our examination and the reasonable and reasoned nature of UNUM's decision, we find that its exclusion of Gingold's rental income from the calculation of his BME was not arbitrary and capricious.

---

for Summary Judgment, 7. Yet UNUM based its earlier calculation on the undocumented assessment of an Accurate employee. *See id.* Ex. E-F, H. UNUM did not calculate Gingold's monthly earnings for purposes of determining his or her benefit until after he filed a claim in June 1999. At that time, Gingold failed to provide appropriate documentation of his rental income as required by the Policy, and UNUM properly excluded Gingold's rental income from the calculation of his BME. *See* Admn. Rec. at UACL 00084-00122. UNUM acknowledged its errant July 1994 calculation and has reimbursed Gingold for the amount he overpaid his premiums. *See* Admn. Rec. at UACL 00521-522.

## III. CONCLUSION

For the foregoing reasons, UNUM's motion for summary judgment is granted while its motion to strike Gingold's affidavit is denied as moot. Gingold's motion for summary judgment is denied. It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated  10/11/02

14